SIELOFF v. HUBBELL.

1. Assault and Battery—Evidence.

Evidence presented in civil action for assault *held,* insufficient to present case for consideration of jury.

2. Trial—Directed Verdict—Inferences.

It is the trial judge's duty, on deciding whether or not a motion for a directed verdict, should be granted in a case when it is necessary to decide between equally plausible inferences, to ascertain whether a favorable view of the inference plaintiff relies upon stands equiponderant with that urged by defendant.

3. Words and Phrases—Conjecture—Proximate Cause—Inference.

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference.

4. Evidence—Proximate Cause.

If the evidence is without selective application to any 1 of 2 or more plausible explanations as to how an event happened or what produced it, they remain conjectures only, but if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

5. Trial—Adjournment—Discretion of Court.

Trial court did not abuse its discretion in refusing adjournment sought by plaintiff in assault case in order to produce more witnesses, where the case was tried some 8 months after pretrial conference and some 2-1/2 years after it was started and plaintiff was unable to produce witnesses who would do anything more than add to his confusion as to where the event took place.

---

References for Points in Headnotes

[2] 53 Am Jur, Trial § 332 *et seq.*
[4] 20 Am Jur, Evidence § 1178.
[5] 53 Am Jur, Trial § 14 *et seq.*

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 15, 1958. (Docket No. 76, Calendar No. 47,271.)  Decided June 12, 1958.

Case by Edwin O. Sieloff against Edward Hubbell for damages arising from alleged assault. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Markle & Markle (Fergus Markle,* of counsel) for plaintiff.
*Carl Schweikart* and *Julien Winterhalter,* for defendant.

SMITH, J. This case involves an alleged assault. The trial court directed a verdict for defendant on the ground that there was "no evidence whatever" of his wrongdoing.

The facts in the case, even from the plaintiff himself, are far from clear. According to his testimony he went to Rene's Bar, at Kercheval and Anderdon streets, in the city of Detroit, on the evening of Sunday, May 25, 1952, around 8 o'clock. There, he says, he had 3 bottles of beer, one of which he was drinking when he "got banged on the head." At 3:45 a.m., the following morning, May 26th, he was admitted to the Receiving Hospital with an admission diagnosis of "cerebral concussion." He had been picked up by the ambulance, however, not in or near Rene's Bar but in front of a restaurant operated by defendant Hubbell, a half block or so away. Testimony was adduced that plaintiff had entered this restaurant later Sunday night, that he had ordered coffee, had "started to rack it [a racket? ruckus?]," with swearing and bad language, and had been ejected by defendant, and had fallen to the pavement when Hubbell had released him.

Factual questions confront us at the outset. First, was plaintiff injured in his fall, or, on the other hand, was he assaulted? If assaulted, by whom? Where? The answer to none of these questions, as we have indicated, is clear. The case was pleaded upon the theory that plaintiff was assaulted by Hubbell, as well as others, in the restaurant on Kercheval avenue. Plaintiff's opening statement placed the location, also, at the restaurant. The pretrial statement notes that:

"Discovery depositions have been taken at some length and in these depositions there is testimony that the injuries to the plaintiff were sustained at the restaurant, and that none were inflicted in the bar, but plaintiff does not see his way clear to abandon the statement of the plaintiff himself, being handicapped by the physical and mental disabilities of the plaintiff following the alleged assault. It should be stated, also, that plaintiff in his deposition stated that he was assaulted by Hubbell, the restaurant owner, but in the bar, rather than in the restaurant."

Thus the confusion about what really happened was not generated at the trial by astute counsel but was known to all parties for some time prior thereto. The pretrial itself, held in April, 1956, antedated the trial by approximately 8 months.

At the trial, in response to questions as to the identity of his opponent, plaintiff made replies, ranging from "I would say Mr. Hubbell," to "Well, it happened on the back of my head." His deposition taken prior to trial, upon which he was cross-examined, states, in part, as follows:

"'Q. Just try to remember. Did you see Mr. Hubbell strike you?
"'A. No, I won't say that.'

"Q. Do you remember making that answer to that question?
"A. No.

"*Q.* The next question:

" '*Q.* And you are just assuming he struck you because he walked behind you, is that right?

" '*A.* Every time I went in the bar I seen him there, and he was always playing policeman.'

"*A.* Yes.
"*Q.* That is right, and that was the truth?
"*A.* Yes.
"*Q.* Now, the next question:

" '*Q.* I mean, on this night when you got hurt did you see Mr. Hubbell strike you that night?

" '*A.* My eyes ain't in the back of my head.'

"*Q.* Did you make that answer, and was it the truth?
"*A.* Yes, I did.
"*Q.* The next question, on page 16:

" '*Q.* Now, you understand me, something struck you, is that right?
" '*A.* Yes.'

"*Q.* Was that the truth?
"*A.* I think so.
"*Q.* All right.

" '*Q.* You don't know whether or not Mr. Hubbell struck you, do you?

" '*A.* I seen the man come up.'

"*Q.* Do you remember making that answer to that question?
"*A.* Yes.
"*Q.* The next question:

" '*Q.* Just answer my question. Did you see Mr. Hubbell strike you?
" '*A.* I wouldn't say that, no.'

"*Q.* Did you make that answer to that question?
"*A.* I don't remember."

The trial court's conclusion as to plaintiff's testimony on the question of identity, "I think it is evident that the witness doesn't know," seems the only reasonable conclusion to be drawn from the record. Apparently, as the pretrial statement observes, the plaintiff was handicapped by the disabilities re-

sulting from the alleged assault. Whatever the reason may be, taking his own testimony, in its entirety, in the light most favorable to him, it does not measure up to the standards necessary to justify submission to the jury. The basic question here, as to the quantum of proof necessary for a jury's consideration, was also involved in *Kaminski* v. *Grand Trunk Western R. Co.*, 347 Mich 417, 421, 422, where we unanimously held, per BLACK, J., that:

"It is thus right to say that the trial judge's immediate duty, motion for direction having been made with address to the rule of conjectural choice between equally plausible inferences, is to determine on favorable view of the inference plaintiff relies upon whether it stands equiponderant at best with such as is, or are, urged by the defendant. If the answer is affirmative, then and only then will the judge be justified in proceeding as moved.

"Some 30 years ago the supreme court of Alabama adopted a workable test-definition designed toward ascertainment of what is conjectural and what is not in negligence cases. That court recently referred to such definition as having 'been quoted until it has become a classic' (*City of Bessemer* v. *Clowdus*, 261 Ala 388, 394 [74 So2d 259].) We quote it as follows from the *Bessemer Case* ·

" 'As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' "

Here isolated answers, taken out of context, support plaintiff's theory that Hubbell inflicted his injuries, while others, so taken, deny it. There is similar doubt and conjecture about plaintiff's jacket and shirt. They were torn. But by whom, or how, the record does not disclose and the trial court properly rejected the jacket's admission into evidence until there was "some evidence to connect it up," which evidence was apparently unavailable. Under these circumstances there is nothing for the jury. *Cf., Taylor* v. *Butcher,* 349 Mich 581. In this posture of the case, it is pointless for us to discuss the locale of the alleged assault.

There was, then, a deficiency in the proofs. This leads us into the next claimed error, the refusal of the trial court to permit plaintiff additional time for producing witnesses. At the time the trial court denied such request plaintiff had under subpoena "the police records in this matter," and requested an adjournment until 10 a.m. the following morning. The court was also informed of difficulties experienced by plaintiff in producing one Ruth Munro, who was asserted to have been present both in the bar and in the restaurant. No formal offer of proof with respect to the testimony sought to be introduced was made.

We note from the calendar entries this case was started approximately 2-1/2 years before the date of trial. We have also noted, and quoted from, the pretrial statement commenting upon the confusion as to the facts even at that time. The opinion of the trial court denying the motion for new trial (order dated March 7, 1957) is revealing as to the subsequent progress of the case:

"*The Court:* I am of the opinion that a new trial should not be granted. One of the grounds for it is that there were some witnesses who were supposed

to have been present at the time and saw what occurred that the plaintiff had been trying to get before the trial. Several adjournments had been given for the purpose of getting the witnesses. The last adjournment before the case was tried was given by Judge Jayne, who had charge of the docket, and he insisted it be tried in December, and therefore I had to try it. In proceeding to trial I gave counsel for the plaintiff leeway, a half day before we started, and a half day to go out and find some witnesses.

"*Mr. Markle:* Just a minute. I don't think that is a correct statement of fact. Your Honor directed a verdict in this case when I had witnesses under subpoena.

"*The Court:* When this case was assigned you were over at some board somewhere.

"*Mr. Schweikart:* Bankruptcy court.

"*The Court:* And you called up and I gave you time. We waited here all morning and you did not come in and we started in the afternoon. There was another half day that I gave you when you ran out of witnesses, and you came in the next morning and you could not produce the witnesses so I proceeded. Now you make a motion for a new trial without still having found the witness, and still not knowing what the witness will testify to. You don't even know if the witness saw what happened. You could not get the witness during this period,—how long is it now? * * *

"*The Court:* Then I am considering something Mr. Sieloff says right now. You know that is not proper. I am considering your motion for a new trial and your affidavits. You have had another 2 months, practically, now, and you haven't still been able to contact the witness, and you don't know whether the witness saw what happened. That is not grounds for a new trial."

On May 17th, following, additional testimony was taken upon a motion for new trial on the grounds of newly-discovered evidence. The testimony of the

witness was inconclusive and added nothing to plaintiff's case save additional confusion.

We are unhappy with this case. It is obvious that there are many unanswered questions in the record. But the rub comes just at this point: it is not at all clear that, granted additional years of time, any further or additional light could be shed on it. Even under an ideal system of justice, and ours is not ideal, cases would undoubtedly fail if witnesses were unavailable or mendacious. We cannot say that the trial court abused its discretion in refusing the adjournment requested.

There is no merit in additional questions presented.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.