## DUIVEN *v.* BRAKESMAN.

1. CONTRACTS—TENDER—OPTIONS—FORFEITURE OF BINDER.
   Purchasers forfeited $2,000 binder, where they failed to make tender of sufficient to make $20,000 down payment on $50,000 purchase price of motel property within time provided by preliminary agreement that was properly construed as an option.

2. TENDER—DEFINITION.
   A tender requires the offer of that to which the tenderee is entitled, without qualification or condition; an actual offer to pay coupled with present ability.

3. APPEAL AND ERROR—TRIAL COURT'S OPINION—APPENDIX.
   The court rules require that the trial court's opinion be printed in full in the appellant's appendix (Court Rule No 67, § 6, as added October 30, 1956).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 30, 1959. (Docket No. 78, Calendar No. 47,814.) Decided April 13, 1959.

Action by Andrew Duiven and Arvella Duiven against Edward R. Brakesman and Fannie Brakesman to recover sum paid for option to purchase real estate. Directed verdict and judgment for defendants. Plaintiffs appeal. Affirmed.

*Mitts, Smith, Haughey & Packard,* for plaintiffs.

*Uhl, Bryant, Wheeler & Upham* (*Gordon B. Wheeler,* of counsel), for defendants.

SMITH, J. This case arises out of an option agreement relating to the sale of real property. The plaintiffs, Mr. and Mrs. Duiven, are the buyers, the defendants, Mr. and Mrs. Brakesman, the sellers.

\* Continued from Volume 355.

REFERENCES FOR POINTS IN HEADNOTE
[1] 55 Am Jur, Vendor and Purchaser § 44.

On June 15, 1955, the parties entered into an instrument entitled "Preliminary Agreement." This agreement provided, in substance, that the plaintiffs would purchase the Royal Motel and Restaurant, in the city of Grand Rapids, for the sum of $50,000, with adjustments to be made for certain improvements, the agreement acknowledging the receipt of a "payment of $2,000 as a binder." It further provided that $20,000 was to be paid down, and it stipulated the amount of monthly payments, but failed to state any interest to be paid upon the balance owing. The instrument closed with the following paragraph:

"The said $2,000 received as binder is to be credited to the purchase price on or before September 15, 1955; and if the buyers fail to exercise their right to purchase said property on or before September 15, 1955 or any extension of time the seller may give the buyer, the buyer shall forfeit the said $2,000 and the seller shall retain the same for remuneration for his work and trouble in negotiating the sale."

The closing date, above specified, was extended by the parties from time to time, until an evening in June of 1956, at which the parties met at the motel. At this conference, Mr. Duiven testified and agreed, he "had available," in addition to the binder, some $14,000 in cash (part of it in the bank and part at home) plus a mortgage, allegedly worth approximately $9,000 or $9,500 on some tavern equipment. He did not, he admits, tell his sellers that night that he had the $14,000 available, but, rather, offered $10,000 in cash, the $2,000 binder, and the chattel mortgage. "Here is what we have got, and here is what we can do" was the way Mr. Duiven himself described his attempted compliance with the terms of the agreement. There is no denial that Mr. Brakesman rejected this proposal. "He told me," says Mr.

Duiven, "that he didn't want any type of mortgage." There was also some conversation respecting interest chargeable on the deferred balance, to which we will make later reference. This was the last and final offer made and the deal was never consummated. Suit was brought for the $2,000, upon the theory that defendants had refused to perform, as agreed, by insisting upon a condition unstated in their agreement, namely, the payments of 6% interest on the unpaid balance of the purchase price. Trial was had by jury, in the course of which, and at the close of plaintiffs' proofs, judgment was directed for the defendants upon the ground that there had never been a tender of the $20,000 agreed upon as the down payment.

There is no dispute between the parties that the court properly construed the agreement as an option. It is the theory of the appellants in this Court, as it was below, that the optionor's alleged insistence upon 6% interest was a material alteration of the terms of the option and that it waived any tender by the optionee. The difficulty with this theory is that the record is such that reasonable men could not here find a valid tender or waiver thereof. *Cf., Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Taylor* v. *Butcher,* 349 Mich 581; *Dalton* v. *Grand Trunk Western R. Co.,* 350 Mich 479; *Sieloff* v. *Hubbell,* 352 Mich 664; 22 MLP, Trial, § 159. Tender requires the offer of that to which the tenderee is entitled, without qualification or condition, an actual offer to pay coupled with present ability. 22 MLP, Tender, § 2. The matter of interest which, argument is made, waived valid tender (and we will merely assume, but not decide, that this is true) came up only after the buyers had informed sellers of their inability to carry out the agreement. Thus we find in Mr. Duiven's own testimony the following:

"*Q.* All right, now, I believe you testified, Mr. Duiven, that on that occasion, you told them that you had $10,000 plus the $2,000 down payment, and a mortgage on the tavern; is that correct?

"*A.* That is right.

"*Q.* And after you had told them that, then you say Mr. Brakesman mentioned this 6% business?

"*A.* That is right."

Also—

"*Q.* So that night, the most that you offered them was $10,000 in cash, in addition to the $2,000 down payment, plus your chattel mortgage on the bar fixtures and liquor license?

"*A.* That is right.

"*Q.* And it was after you had offered them that, that this matter of the 6% business came up?

"*A.* That's right."

After plaintiffs had rested, and motion had been made for directed verdict, the court having granted the motion (holding that "Certainly there must be some showing or proof that there has been a compliance, or at least an offer to comply, and a refusal"), plaintiffs were allowed to reopen their proofs and call the seller to the stand for cross-examination. His testimony was far from clear or consistent and did little to aid their case. The trial court (his opinion, we note, is not printed in full in appellants' appendix, as is required by Court Rule No 67, § 6 [1945]*) summarized the case and the testimony in the following terms:

"Of course, as far as the option contract is concerned, the parties had a right to orally change the conditions, but in this contract, it appears there have been no conditions changed except the extension of time from September 15th to some day in the future not named. Neither party has testified that any particular time in the future was set as a time,

---

* As added October 30, 1956. See 347 Mich xxii.—REPORTER.

in which the money should be paid. However, it is evident that when June of 1956 arrived, and which they said was the last meeting of the parties, that there was then a conclusion of the contract so far as the vendor was concerned, because, definitely, the vendees had at that time advised him that they were unable to perform. Now, had they so chosen, had Mr. Brakesman so chosen, he could have modified the conditions of this contract. The parties could, of course, by oral agreement, have agreed that they could make a less down payment. This action, however, is not on the basis that the vendees have performed their part of the contract. They admit that they have not. It is not an action of specific performance, to require the vendors to convey or to execute a contract to purchase. The action, of course, is to recover this $2,000 that was paid for the purpose of securing the option, and, in the event that it was exercised, it was to be applied upon the purchase price.

"Much as the court regrets to do so, I definitely feel that there has been a forfeiture so far as the vendees are concerned, that they have not complied with the contract; that there was no offer after June, 1956, so far as the testimony is concerned, to pay the $20,000. Had there been an offer subsequent to that to pay the $20,000, the tender, then there might have been a basis of an action for specific performance on the claim that the contract provided for no interest, and the action might have been maintained to declare that, and direct them to perform, but on the basis of the option, which would have been without interest, and they probably would have defended on the basis that they could not perform because they were demanding interest. I am afraid I am compelled to grant the motion."

We find no error below. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.