FRAKES v. EGHIGIAN.

1. VENDOR AND PURCHASER—TENDER.

A formal tender is not necessary to complete land contract contemplated by preliminary purchase agreement, where the vendor by words or acts has shown that the tender would not be accepted.

2. SAME—RENUNCIATION OF CONTRACT—FINDINGS—EVIDENCE.

Findings of trial court that vendors' evasions and refusals to attend agreed meetings to close deal for sale of property

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Vendor and Purchaser § 344.
[2] 3 Am Jur, Appeal and Error § 895 *et seq.*

were tantamount to a renunciation of preliminary contract for sale of property, that plaintiff was ready, willing, and able to close the deal on the agreed date, that vendor and his wife were thoroughly untrustworthy both as to their contracts and their testimony, and that, although a tender was made, specific performance would be ineffective because wife had not signed the contract to sell property to which husband held title, are not disturbed on record presented on husband's appeal from decree awarding purchaser damages upon defendant husband's failure to deliver clear title.

Appeal from Genesee; Elliott (Philip), J. Submitted October 13, 1959. (Docket No. 57, Calendar No. 47,853.) Decided January 4, 1960.

Bill by Walter Frakes against Paul Eghigian, Rose Eghigian, and Sampson Die & Manufacturing Company, a copartnership, for specific performance of contract to sell land. Bill dismissed as to Rose Eghigian and Sampson Die & Manufacturing Company. Money damages decreed against Paul Eghigian upon his failure to convey property to which court found plaintiff entitled. Defendant Paul Eghigian appeals. Affirmed.

*Anbender & Anbender* and *Gault, Davison & Bowers* (*Meyer Weisenfeld*, of counsel), for plaintiff.

*Joseph W. Louisell* and *Sigler, Anderson & Carr* (*Cassius E. Street, Jr.*, of counsel), for defendant.

Voelker, J. On April 20, 1954, the defendant Paul Eghigian listed for sale a piece of property containing approximately 40 acres with Henry Kupiec, a real estate salesman. Although Mr. Eghigian was married to his codefendant Rose Eghigian at the time and they were also copartners in Sampson Die & Manufacturing Company (of which more presently), the property was owned solely by Mr. Eghi-

gian, and he alone signed the listing agreement. Thereafter Mr. Kupiec obtained an offer from the plaintiff Walter Frakes to purchase the entire piece of property for $40,000; that offer was accepted by Mr. Eghigian; and the 2 parties signed a purchase agreement on August 24, 1954, providing that the buyer pay the seller $1,500 as earnest money, and that the contract be closed on or before September 18, 1954, by the purchaser paying to the seller either $40,000 cash or $20,000 down and the balance in 5 equal annual payments with interest of 5%.

After signing the purchase agreement the plaintiff applied for and obtained a necessary permit to erect a 300-unit trailer park on the property, and as at least a partial result thereof the property appears to have increased in value upwards of $20,000. The plaintiff also sought and received a promise of financial assistance to swing the deal from one John C. Kinnally.

Mr. Kupiec arranged a closing date between the parties for September 15, 1954. The defendants, Paul Eghigian and his wife, Rose Eghigian, did not attend this meeting, and Mr. Kupiec accordingly telephoned Mr. Eghigian and arranged still another closing date for September 17, 1954. Again the Eghigians were absent, and again they were reached by telephone, and Mr. Eghigian replied that he could not attend the meeting because his wife was busy. With the consent of all concerned a further meeting was set for the next day, September 18th, in the office of a Mr. Nicholson, who was the lawyer for the "angel" Kinnally. The next morning the parties once again met for the closing, and once again the elusive Eghigians were not present. Mr. Kupiec called the Eghigian home, and Mrs. Eghigian responded by saying that her husband was out, and she reluctantly gave other vague and evasive answers

that appeared to be inspired by a male voice in the background.

The parties remained waiting in Mr. Nicholson's office for the better part of the day and made several other attempts to reach Mr. Eghigian, but without success. That afternoon Mr. Kupiec left Mr. Nicholson's office to find Mr. Eghigian, and according to the testimony of Mr. Nicholson, "he was taking the whole thing with him," evidently referring to the tender and other papers. Two days later, on September 20, 1954, the plaintiff approached Mr. Eghigian in his office in a further attempt to close the deal, whereupon Mr. Eghigian in a burst of frankness said that there was no deal and that the plaintiff should sue him.

During the long vigil in Mr. Nicholson's office on September 18th the parties went through a dramatic tender of the purchase money, for which tableau 2 police officers were recruited off the street to witness Mr. Nicholson hand a check for $20,000 to Mr. Kupiec for Mr. Eghigian on behalf of Mr. Frakes and Mr. Kinnally. The tender was received by Mr. Kupiec for Mr. Eghigian and, according to the testimony of Mr. Nicholson, was taken to Mr. Eghigian that afternoon.

The bill of complaint in this case was filed June 14, 1955, against the defendant Paul Eghigian alone. Answer was filed on September 8, 1955, and on October 28, 1955, depositions were taken from Mr. and Mrs. Eghigian. Both the answer and the Eghigian depositions claimed that the property was purchased with the funds of the Sampson Die & Manufacturing Company and was therefore partnership property. The Sampson Company is a copartnership in which the defendants Paul and Rose Eghigian are the sole equal partners.

Subsequently plaintiff moved to join Rose Eghigian and the Sampson Die & Manufacturing Com-

pany as parties defendant, but that motion was denied and during November, 1956, the hearing commenced. After several days of testimony the plaintiff called Rose Eghigian as a witness, and the defendants objected to Mrs. Eghigian testifying against her husband, which objection was sustained. The plaintiff thereupon again moved to add Mrs. Eghigian and the Sampson Die & Manufacturing Company as parties defendant, and this time the motion was granted. The cause was then adjourned, and supplemental bills of complaint and answers were filed. In November of 1957 the hearing was renewed, and all of the witnesses who had testified earlier were again called upon to testify.

At the renewed hearing the defendant Paul Eghigian claimed for the first time that the purchase agreement was supposed to have included a clause by which he was to retain 5 to 10 acres of the property for himself. To bolster this contention he claimed he could not read very well and further that the listing agreement with Mr. Kupiec provided for the retention of 5 to 10 acres. The trial chancellor found as a fact that such a provision was embraced. in the listing agreement with Mr. Kupiec, but that it was inconsistent with the purchase agreement entered into between the plaintiff and Mr. Eghigian, which was a flat offer of $40,000 for the entire parcel of land without any provision for the retention of any undetermined portion of that parcel. Apparently another reason for his so finding was that Mr. Eghigian had failed to raise this defense in any of his prior claims of defense, testimonial or otherwise.

Regarding the defendants' claim below that the property was purchased with partnership money and was therefore partnership property, the trial court held that the property was purchased in the name of Paul Eghigian and was therefore not partnership property. In his opinion the chancellor said that

the partnership was apparently one of convenience, that is, that the Eghigians asserted that property belonged to the partnership when such was convenient to them and otherwise when that also seemed convenient.

The defendants also raised a question of estoppel in the second trial, which claim was based on a purchase of building materials for the property made by Mr. Eghigian on July 15, 1955, after he had failed to go through with the deal. The trial court held that there were no grounds for estoppel, and that holding has not been appealed.

After careful consideration of all the evidence the chancellor found and held that the plaintiff was entitled to specific performance of his contract to purchase. He held further, however, that since the court could not very well force the defendant Rose Eghigian to join in the sale (since she had never signed the purchase agreement), a decree of specific performance would be ineffective and valueless to the plaintiff. In this connection the court further felt there would be some hardship to the defendants as a result of the building materials that they had purchased to improve the property, even though that maneuver fell short of creating any estoppel. The chancellor therefore decreed that defendant Paul Eghigian should have 20 days in which to deliver clear title of the property to the plaintiff, and, upon his failure to do so, a decree would be entered granting plaintiff damages in the amount of $30,000. By the end of the 20-day period no title had been delivered, and the court accordingly entered its decree for damages in the amount of $30,000, from which the defendants have appealed.

Appellant sets out the following question on appeal:

"Where the seller-defendant had not previously repudiated his agreement to sell and the evidence unequivocably indicated that the purchaser-plaintiff was not able to make the necessary down payment within the time prescribed by the agreement, did the lower court err in holding that the purchaser-plaintiff was entitled to specific performance of the agreement to sell real property or, in the alternative, to damages in the sum of $30,000?"

The chancellor below found in part as follows: (1) That Paul Eghigian intentionally avoided the closing meetings; (2) that it was the acts and evasions of the Eghigians that made impossible the closing of the deal; (3) that the plaintiff had the necessary funds available and was ready, willing and able to close the deal on the agreed date; (4) that the Eghigians were "thoroughly untrustworthy" both as to their contracts and their testimony.

The finding of the chancellor that a valid tender of the agreed price by the plaintiff was rendered unnecessary by the acts of the defendants properly relied upon our decision in *Hanesworth* v. *Hendrickson,* 320 Mich 577, wherein we held that a formal tender is not necessary where the defendant by his words or *acts* has shown that it would not be accepted. Such were the facts as the chancellor found them in this case, namely, that the defendants' evasions and refusals to attend the agreed meetings were tantamount to a renunciation of the contract. In other words, in the ears of the chancellor their acts echoed so loud that their words after the fact could not be heard. We see no reason to alter his findings or holdings in this respect.

Notwithstanding his holding that the acts of the defendants had rendered a formal tender of consideration by the plaintiff unnecessary, the chancellor also found that plaintiff by an attorney had sufficiently tendered performance to Mr. Kupiec, the

real estate salesman, who accepted the plaintiff's check on behalf of defendant Paul Eghigian. We also see no reason to alter this finding. It follows that the assumptions of facts contained in the appellant's question on appeal fall along with the question itself.

Apparently the defendant seeks primarily from us a review of the facts *de novo*. He has now got what he sought, and the findings of the chancellor are upheld. It follows that the decree is therefore affirmed, with costs awarded to the prevailing party.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

CARR, J., did not sit.