KELLER v. PAULOS LAND COMPANY.

1. CONTRACTS—PERFORMANCE—TENDER.

Tender of performance of a contract to pay money is an act by which one produces and offers to a person holding a claim of demand against him the amount of money which he considers and admits to be due, without any stipulation or condition.

2. SAME—TENDER—NECESSITY.

A formal tender is unnecessary where a party has shown by acts or words that tender would not be accepted.

3. APPEAL AND ERROR—NONJURY CASES.

Findings of fact made by court sitting without jury will not be set aside by appellate court unless clearly erroneous (GCR 1963, 517.1).

4. CONTRACTS—TENDER—CERTIFIED CHECKS.

Trial court was justified in holding offer of payment by certified check was valid tender, where refusal to accept tender was not based on fact that certified checks were offered.

5. SAME—TENDER—EVIDENCE.

Trial court's finding that offer of certified check for balance due vendor from purchaser on land contract and another certified check for amount of interest due on balance was valid tender of payment, *held*, based on valid testimony in case where testimony showed that purchaser and his lawyer made a trip to office of vendors' lawyer for express purpose of making tender, vendors were present, and vendors' lawyer handled checks but did not keep them, and at no time did vendors offer deed to purchaser as required by land contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]    52 Am Jur, Tender §§ 22, 24.
[2]    52 Am Jur, Tender §§ 3, 4.
[3, 9]  5 Am Jur 2d, Appeal & Error § 839.
[4]    36 Am Jur, Money § 10.
[5]    52 Am Jur, Tender § 49.
[6]    52 Am Jur, Tender § 39.
[7, 10]  17 Am Jur 2d, Contracts § 25.
[8]    17 Am Jur 2d, Contracts § 276.

6. SAME—TENDER—INTEREST.
    Valid tender of payment in accordance with contract stops in-
        terest from running on debt from time of tender.

7. SAME—AMBIGUITY—PAROL EVIDENCE—PRELIMINARY NEGOTIATIONS.
    Preliminary negotiations of the parties may be used, not to vary
        or contradict the plain terms of an instrument, but to aid the
        court in determining the intent with which ambiguous words
        were used.

8. SAME—AMBIGUITY—CONSTRUCTION AGAINST DRAFTSMAN.
    Contract is construed most strongly against party whose attorney
        drafted instrument containing ambiguous terms.

9. SAME—AMBIGUITY—FINDING OF TRIAL COURT.
    Findings of trial court as to meaning of ambiguous terms in land
        contract will not be set aside when appellant fails to show
        that they were clearly erroneous.

10. VENDOR AND PURCHASER—EASEMENTS—AMBIGUITY—DESCRIPTION.
    Finding by trial court that phrase "nonexclusive easement" used
        in land contract by which vendors contracted to convey a
        "nonexclusive easement" over land adjoining that contracted
        to be sold was ambiguous and that it meant that purchaser
        should have right to use easement lands for parking, held,
        proper, in case where testimony showed that purchaser thought
        that it included parking, and vendor's agent had promised park-
        ing in preliminary agreement, and vendor testified at one time
        that he did not know what it meant, and at another that it
        meant only room to turn around.

Appeal from Grand Traverse; Brown (Charles L.), J. Submitted Division 3 June 2, 1966, at Grand Rapids. (Docket No. 1,509.) Decided November 22, 1966.) Leave to appeal granted by Supreme Court March 9, 1967. See 379 Mich 752, 381 Mich 355.

Complaint by Joseph Keller and Ethel Keller against Paulos Land Company, a Michigan corporation, for balance due on land contract, interest, and injunction. Judgment determining amount due, and interest, and denying injunction. Plaintiffs appeal. Affirmed.

*James Thomson,* for plaintiffs.

*Zerafa & Zerafa,* for defendant.

HOLBROOK, P. J.   This is a suit for the balance due on a land contract, executed March 8, 1962, by Joseph and Ethel Keller, husband and wife, plaintiffs, and Frank G. Paulos, president of the defendant corporation, Paulos Land Company, for the sale of land located in Traverse City for a purchase price of $40,000. A down payment of $15,000 was made when the contract was executed.

Plaintiffs' complaint sought: (1) a $25,000 balance due, (2) interest from the date of execution of the contract to the date of judgment and (3) an injunction against defendant's parking of automobiles on an easement.*

Defendant's answer: (1) admitted owing the $25,000 balance, (2) alleged that interest had been stopped by an unaccepted tender on September 29, 1962, and (3) contended that the intention of the parties—as indicated both by language in the contract and by prior agreement and understanding—was that the easement could be used for parking.

Circuit Judge Charles L. Brown, sitting without a jury, heard testimony in the cause on August 4, 1964, and March 29, 1965. By opinion filed August 4, 1965, Judge Brown decided: (1) that the September 29, 1962 tender was valid and binding, (2) that plaintiffs were entitled to judgment for $25,000

---

* The contract also provided for defendant-vendee's removal of three buildings from the purchased land at a specific price for each. These buildings were admittedly removed, but no money appears to have been paid for them.

However, the complaint sought judgment only for the $25,000 balance due and not for the additional $10,000 for the buildings removed. The trial court's opinion makes no reference to the provision and his judgment awards nothing for the buildings' removal. Appellants do not raise the question on appeal. The question is not before this Court. GCR 1963, 813.1.

with interest to date of tender in the amount· of $710.17 and (3) that defendant was allowed to use the easement for parking.

At some undisclosed time, between execution of the land contract on March 8, 1962, and commencement of suit on August 3, 1963, defendant entered the land, razed the three buildings, constructed and leased other buildings, and black-topped a 103½-x-33-foot strip of the easement which has been used for parking of cars since the buildings were constructed.

The pertinent facts appear to be as follows: Preliminary negotiations on the subject contract began on or about February 13, 1962, when the Kellers' duly-authorized agent for the sale of the property, Leo Vachow, a realtor, executed an option with Frank Paulos to purchase the property. The option was drawn by Mr. Vachow.

The option agreement offered by defendant contained the following hand-written language: "207 + ft, of Front street frontage including 33 ft easement along north line *for parking* of said Keller property." (Emphasis added.) However, the copy of the option agreement offered by plaintiffs did not contain the words "for parking."

Mr. Paulos testified that those words were added by Mr. Vachow at a later date after they had discussed the parking problem. He said that adequate parking was the essence of the purchase and that that is why he asked for the 33-foot easement. Mr. Vachow denied that he added the words "for parking" or that there was ever any discussion about using the easement for parking. However, Mr. Vachow later testified that it was he who suggested an easement and he did so because: "You would have to have access in the back there for garbage and snow removal access, *parking cars,* and so on." (Emphasis added.)

The land contract, which was drawn by the Kellers' former attorney, created an easement in the following words:

"together with a nonexclusive easement for purposes of ingress and egress in connection with the aforesaid parcel of land, said easement being described as 33 feet lying north of said parcel of land, it being agreed that if seller in the development of his land north of said parcel of land, desires an alley to be established for Front street, then such part of said easement as shall not be required for said alley shall revert to the seller."

The parties do not agree as to the meaning of the phrase "nonexclusive." At the court's direction, testimony was taken from both sides as to the meaning of the phrase "nonexclusive."

Mr. Paulos testified,

"We needed additional room for parking of cars, et cetera, around the building; so the attorney set this thing up, and he gave us a nonexclusive use of this property—this 33 foot easement. We could do anything we wanted with it; we could blacktop it, we could pave it, we could do anything with the exception of building on it."

He stated that parking facilities were required by the General Service Administration, one of his tenants on the purchased property, and that he was required to furnish seven places to Standard Oil Company, another tenant. The Traverse City chief inspector testified that a city ordinance required that between 20 and 25 parking spaces be provided for the building.

Mr. Keller testified on two occasions that he did not know what the phrase meant but, at another time, said that "nonexclusive" meant: "Just room to turn around, and that is all; not to park." He said that "for purposes of ingress and egress"

meant, "Just to turn around." He further testified that he objected to parking on and paving of the easement during the September closing and at other times. However, he couldn't remember specific dates and places.

On August 7, 1962, Mr. Paulos wrote to the Kellers' attorney, Mr. James Thomson, enclosing three copies of what was titled "Supplement to Land Contract." His letter stated in part, "However, before we continue on any further closing negotiations, I must first have in my possession these supplements to land contract agreements which we all agreed to." The supplement provided in pertinent part:

"Whereas it was orally agreed between the parties at that time [March 8, 1962] that the said purchaser could cause the above referenced easement to be graded and surfaced with blacktop bituminous paving.

"Now, therefore, for the purpose of clarity and in consideration of the mutual benefits to both parties, it is specifically agreed:   *   *   *

"That until an alley is established on the said easement property, that the said easement may be used by the purchaser, or its assigns, for the parking of motor vehicles."

This supplement was never executed. It appears from the record that Mr. Paulos made no further attempt to have the supplement executed. At the time of the closing, Mr. Danford, Mr. Paulos' attorney, made no mention of the supplement and did not demand it.

Mr. Paulos attempted several times to arrange a closing date with plaintiffs. On September 5, 1962, Mr. Paulos made a trip to Detroit and talked to Mr. Thomson in an attempt to arrange a closing. Mr. Thomson said he would be in Traverse City

the following week. Mr. Thomson did not show. Later Mr. Thomson indicated that he would be in Traverse City with the Kellers the week of September 17th. They did not show. Again on September 24th, during a telephone conversation, Mr. Thomson said he would call Mr. Paulos on Wednesday. He did not call. Later, Mr. Paulos called Mr. Thomson who indicated he would be up on Saturday. He did not show up on Saturday.

Finally, on September 29, 1962, Mr. Paulos went with his attorney, Mr. Danford, to Mr. Thomson's office in Detroit "to close the transaction." The Kellers were also present.

Mr. Paulos testified that Mr. Danford gave Mr. Thomson two *certified* checks, one for $25,000 and the other for $710.17 for interest from the date of purchase. He testified that Mr. Thomson took the checks, laid them on his desk, picked them up again, got into an argument with the Kellers, and then set the checks down again. When Mr. Thomson left the room with the Kellers, Mr. Danford picked up the checks.

Mr. Danford testified that, "It was stated that these checks took care of everything." He said that he handed the checks to Mr. Thomson, but never let go of them completely "because I didn't trust letting them go under the circumstances." He testified that he did give Mr. Thomson "partial possession" of the checks and that his purpose in going to Thomson's office was to make tender.

Mr. Keller said that he didn't see anyone give checks to Mr. Thomson, but he did admit that Mr. Danford had checks in his hand, that he did offer them to Mr. Thomson, that "he said he was going to pay us up" and that Mr. Danford did offer him $25,000 and $710.17 in interest.

Mr. Paulos testified that at no time was a deed offered although one was requested. Mr. Danford

testified similarly and also stated that at no time did he refuse to accept a deed. Plaintiffs did not deny that they did not offer a deed and did not explain why they didn't.

Plaintiffs made no objection at the closing or in their pleadings that the attempted payment was made by means of checks. In fact, this point doesn't seem to have been raised until trial.

On the same day, after the closing failed, Mr. Paulos and Mr. Danford discussed the possibility of purchasing the 33-foot easement strip. Mr. Paulos offered $500 for it. Subsequently, the Kellers quoted a figure of $8,000 for the strip. No further attempts to purchase the strip were testified to thereafter.

Even after the unsuccessful closing, the parties nevertheless continued to negotiate for the completion of the sale of the principal property under the land contract. These negotiations included attempts to change the legal description which was contained in the land contract. The description was found to be erroneous as a result of a survey which was made by agreement of the parties on March 27, 1962. The survey was requested by Mr. Paulos "because we wanted to establish the correct description of the property."

At one time, when defendant was trying to arrange a closing, Mr. Danford told Mr. Thomson to send the deed to the National Bank & Trust Company and that there would be a check in escrow because, as Mr. Danford said, "I was apprehensive about sending the checks without the instruments." It is this arrangement which appellants claim imposed a condition on the September tender. However, the testimony indicates that this arrangement was never pursued or insisted upon by defendant.

The two issues raised by the parties on appeal are the same as those which they agreed were deci-

sive in the lower court: (1) Was a legal tender made
to plaintiffs on September 29, 1962? (2) Were
plaintiffs entitled to a permanent injunction enjoin-
ing and restraining defendant from any use· of the
easement other than ingress and egress?

In dealing with the first issue, we find that tender
is the act by which one produces and offers to a
person holding a claim or demand against him the
amount of money which he considers and admits
to be due, in satisfaction of such claim or demand,
without any stipulation or condition. 22 MLP, Ten-
der § 1; *Duiven* v. *Brakesman* (1959), 356 Mich 1, 3.

The trial judge found that the September 29, 1962,
tender was valid and binding. The issue was one
of fact under the evidence. Our review on such mat-
ters is circumscribed by GCR 1963, 517.1 which
provides in part as follows:

"In all actions tried upon the facts without a
jury or with an advisory jury, the court shall find
the facts specially and state separately its conclu-
sions of law thereon and direct the entry of the ap-
propriate judgment * * * *Findings of fact shall
not be set aside unless clearly erroneous.* In the
application of this principle regard shall be given to
the special opportunity of the trial court to judge
the credibility of those witnesses who appeared be-
fore it." (Emphasis supplied.)

Also, see *Kevreson* v. *Michigan Consolidated Gas
Company* (1965), 374 Mich 465, note at 467, citing
*Schneider* v. *Pomerville* (1957), 348 Mich 49. We
have followed this basic rule of the scope of review
of nonjury fact-findings in *Bill* v. *Brown* (1966),
2 Mich App 455.

Appellants assert that the two certified checks
tendered were insufficient tender. No such claim
was made at that time nor in the pleadings before
the trial court. It was consistent for the trial court

to hold that the tender was legal for under the evidence the refusal was not based upon the fact that certified checks were proffered. The law does not require a useless formality; a formal tender is unnecessary where a party has shown by acts or words that tender would not be accepted. 22 MLP, Tender § 3; *Frakes* v. *Eghigian* (1960), 358 Mich 327, 333; *Ranck* v. *Springer* (1952), 333 Mich 671, 674; *Hanesworth* v. *Hendrickson* (1948), 320 Mich 577, 579.

The tender which was made before the commencement of the action, stopped the running of the interest in accord with the trial court's decision. 14 MLP, Interest § 11; *Harris* v. *Axline* (1949), 323 Mich 585; *Weinburgh* v. *Saier* (1942), 303 Mich 640, 645.

We conclude that the trial court's determination that a legal tender was made to plaintiffs on September 29, 1962, was based upon valid testimony. We do not set aside findings of fact unless clearly erroneous.

We now come to plaintiffs' last question as to whether they were entitled to a permanent injunction restraining defendant from any use of the easement other than ingress and egress.

The contract provided for a "nonexclusive easement." The trial judge determined that these words were ambiguous and therefore allowed oral testimony to aid the court in determining the intent with which such words were used. This ruling is in accord with our decision in the case of *Teachout* v. *Maiers* (1965), 2 Mich App 69, 73, quoting from *McIntosh* v. *Groomes* (1924), 227 Mich 215, wherein we stated:

"This Court will not set aside the findings of fact made by the trial court unless they are clearly erroneous. GCR 1963, 517.1.

" 'The cardinal rule in the interpretation of contracts is to ascertain the intention of parties. To this rule all others are subordinate.  *  *  *

" 'If ambiguous terms are used, the preliminary negotiations may be considered, not to vary or contradict the plain terms of the instrument, but to aid the court in determining the intent with which such words were used.' (Authorities cited.) *McIntosh* v. *Groomes* (1924), 227 Mich 215, 218, 219.

"The trial court did not err in accepting evidence to show the true intent and meaning of paragraph 11 of the sales agreement."

The former attorney for plaintiffs prepared the contract and the trial court was constrained to construe the contract most strongly against plaintiffs for that reason. *Baker Contractor, Inc.,* v. *Chris Nelsen & Son, Inc.* (1965), 1 Mich App 450; *Minkus* v. *Sarge* (1957), 348 Mich 415; *Michigan Chandelier Co.* v. *Morse* (1941), 297 Mich 41; *Olsen* v. *Fry* (1920), 234 Mich 233. The rules applicable to findings of fact by the trial judge are applicable to the issue raised by plaintiffs in their second question. We do not disturb the findings of fact by the trial judge as to the interpretation of the ambiguous terms used in the contract. Plaintiffs have failed to show that the same were clearly erroneous.

Judgment of the trial court affirmed. Costs to defendant-appellee.

Burns and Hoffius, JJ., concurred.