## DAVIS v NATIONAL AMERICAN INSURANCE COMPANY

1. INSURANCE—POLICY TERMS—ENFORCEMENT—STATUTORY PROVISIONS—OMISSION.

   A policy of insurance will be enforced as written where the terms are clear and unambiguous; statutorily mandated fire insurance provisions will be applied to an insurance contract even where omitted by the parties.

2. INSURANCE—APPRAISAL—ARBITRATION AGREEMENTS—STATUTORY AGREEMENTS—REVIEW.

   A valid appraisal clause in an insurance contract constitutes a common-law arbitration agreement, and it is therefore not reviewed by as strict a standard as a statutorily imposed arbitration procedure.

3. INSURANCE—CONTRACTS—ARBITRATION PROCEDURES—BAD FAITH—PURPOSE OF AGREEMENT—APPEAL AND ERROR.

   An arbitration award determined under a contractually agreed upon arbitration procedure in an insurance contract will be upheld on appeal where the parties to the arbitration have not acted in bad faith so as to defeat the real purpose of the arbitration.

4. INSURANCE—VALUE DETERMINATION—PERSONAL PROPERTY—MARKET VALUE.

   Market value is not the sole measure by which a determination of the value of personal property destroyed by fire may be made.

5. CONTRACTS—INTERPRETATION—COURTS—FACT FINDINGS—APPEAL AND ERROR.

   The factual findings of a trial court made in interpretation of a contract will not be upset on appeal unless clearly erroneous.

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 276.
   44 Am Jur 2d, Insurance §§ 1347, 2008.
[2, 3, 6] 44 Am Jur 2d, Insurance §§ 1707, 1708.
[4] 44 Am Jur 2d, Insurance § 1632 *et seq.*
[5] 17 Am Jur 2d, Contracts §§ 260–263.
[7] 44 Am Jur 2d, Insurance §§ 1717, 1718.

6. Insurance—Settlement Agreement—Appraisal Committee—Mistake—Adoption Notwithstanding Error.

An insurance settlement figure which was agreed upon by two of three members of an appraisal committee which was selected pursuant to an arbitration agreement in an insurance policy is valid even if it was arrived at by mistake where the figure was adopted as an appropriate total award notwithstanding any error committed in reaching it.

7. Appeal and Error—Arbitration Umpire Fees—Court Determination—Proper Consideration.

A trial court's determination that the fees charged by an arbitration umpire were reasonable and were payable equally by both parties was not clearly erroneous where the court considered evidence of the services performed by the umpire in reaching its determination, and where there was a written agreement between the parties to divide such fees.

Appeal from Macomb, Howard R. Carroll, J. Submitted June 23, 1977, at Detroit. (Docket No. 31177.) Decided September 8, 1977. Leave to appeal applied for.

Complaint by Roy Davis and Clara Davis against the National American Insurance Company to compel arbitration pursuant to an arbitration agreement contained in a policy of fire insurance and for judgment thereon. An arbitrator was appointed. An award was determined by the arbitrators. Summary judgment for plaintiffs in the amount of the arbitration award. Defendant moved to amend the judgment or to have it set aside. Motion denied. Defendant appeals. Affirmed.

*Bacalis & Associates, P. C.,* for plaintiffs.

*Denenberg, Tuffley & Thorpe,* for defendant.

Before: Beasley, P. J., and V. J. Brennan and J. R. McDonald,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

V. J. BRENNAN, J. Defendant National American Insurance Company appeals, as a matter of right, from a November 15, 1976, order issued by Macomb County Circuit Court Judge Howard R. Carroll denying its motion to amend or, in the alternative, set aside a summary judgment entered in favor of plaintiffs Roy and Clara Davis on December 13, 1976. Claim of appeal was filed December 3, 1976. Defendant appeals as of right under GCR 1963, 806.1.

Plaintiffs are the owners of a commercial building located in Frazier, Michigan. Immediately prior to January 6, 1976, this building consisted of a single story portion housing a meat locker plant and a two story portion with a restaurant and party store on the first level and four apartments on the upper level. The entire building was insured against fire by defendant pursuant to the terms of an insurance policy made effective July 15, 1975.

The fire insurance policy issued by defendant contained the following provisions mandated by MCLA 500.2832; MSA 24.12832:

"Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any

two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

"Company's options. It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required."

The policy also contained a so-called "Co-Insurance Clause":

"The company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this policy for such property bears to the amount produced by multiplying the co-insurance percentage applicable [specified as 80% in plaintiffs' policy] by the actual cash value of such property at the time of the loss."

On January 6, 1976, the building owned by plaintiffs and covered by defendant's policy of insurance was damaged by a fire. Unable to agree with defendant as to the amount of their loss and claim, plaintiffs filed their complaint on May 31, 1976, asking Macomb County Circuit Court to appoint an umpire as provided for under the parties' agreement. In an order dated April 5, 1976, Circuit Court Judge Howard R. Carroll appointed Frank McNelis, a Mt. Clemens attorney, to the position. On July 1, 1976, after an apparent series of previous meetings, McNelis met with plaintiffs' appraiser Robert Krause and defendant's appraiser Orval Green for a final appraisal conference.

At this conference, McNelis set the entire depreciated actual cash value of plaintiffs' property at $228,540.29. Defendant's appraiser Green then asked McNelis to verify if his total loss figure was $202,330. McNelis responded that this figure was correct. Shortly afterward, Krause agreed to sign an appraiser award with McNelis affixing an actual cash value to plaintiffs' property of $228,540.29 and a total loss and damage figure of $202,330. The appraisal award signed by McNelis and Krause was filed with the circuit court on July 7, 1976.

Plaintiffs filed both a petition to confirm the award and a motion seeking leave to amend the original complaint in conformity with the award. Defendant responded by filing a motion to set aside the appraisal award.

Defendant further challenged McNelis' motion for payment of his fees.

On August 6, 1976, plaintiffs filed a motion for partial summary judgment alleging that no material issue of fact existed as to their claim seeking recovery on the appraisal award. GCR 1963, 117.2(3). Plaintiffs submitted four affidavits in support of this motion.

Defendant's motion to set aside the appraisal award, plaintiffs' motion for partial summary judgment and McNelis' motion for fees were all heard by Judge Carroll on August 23, 1976. On August 30, 1976, the judge issued his written opinion. He found that McNelis had made proper determinations in his appraisal, that plaintiffs' motion for summary judgment should be granted pursuant to GCR 1963, 117.2(3), and that McNelis should be compensated according to the estimate he submitted. At a hearing on September 13, 1976, Judge Carroll signed an order of summary judgment in

accordance with his earlier written opinion. Defendant's motion on October 1, 1976, to amend or set aside the summary judgment previously entered was denied in an order dated November 15, 1976. Defendant appeals from that denial.

On appeal, defendant brings several allegations of error. We will speak to most of them.

Defendant contends that in this case arising from a claim made under a standard policy of fire insurance written in accordance with MCLA 500.2832; MSA 24.12832, the court-appointed appraisal umpire erred legally in determining the actual cash value of the insured's fire-damaged building.

As a general rule, insurance policies are considered much the same as any other contract. Such a policy is a matter of agreement between the parties, and the courts will determine what that agreement is and enforce the agreement accordingly. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Where the terms of an insurance policy are clear and unambiguous, that policy will be enforced as written. *Weisberg v Detroit Automobile Inter-Insurance Exchange,* 36 Mich App 513, 517; 194 NW2d 193 (1971). This principle applies as strongly, or more so, in cases where the terms at issue are required to be incorporated into the parties' agreement by statute. In fact, the fire insurance provisions made mandatory by MCLA 500.2806; MSA 24.12806 and MCLA 500.2832; MSA 24.12832 will be judicially applied to an insurance contract even where omitted by the parties. *Dasen v Frankenmuth Mutual Insurance Co,* 39 Mich App 582, 583–584; 197 NW2d 835 (1972).

The first insurance policy issued by defendant to plaintiffs in the present case provided coverage "to

the extent of the actual cash value of the [insured property] at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality  \* \* \* ".  MCLA  500.2832(1);  MSA 24.12832(1). The policy also outlines the procedure employed to determine actual cash value and the cost to repair or replace property in the event of a dispute between the insurer and the insured:

> "Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties  equally."  See  MCLA  500.2832(1);  MSA 24.12832(1).

This appraisal procedure has been referred to by this Court as "a substitute for judicial determination of a dispute concerning the amount of loss," as well as "a simple and inexpensive method for the prompt adjustment and settlement of claims". *Thermo-Plastics R & D, Inc v General Accident Fire & Life Assurance Corp Ltd*, 42 Mich App 418, 422; 202 NW2d 703 (1972).

Defendant does not contend in this case that the panel of appraisers failed to carry out their duty to establish the cost of repair or replacement regarding the portion of plaintiff's building damaged by fire. Rather, the claim is made that the panel failed to fully satisfy their responsibilities because they incorrectly determined the actual value of plaintiff's building at the time of loss. We do not believe Umpire McNelis erred legally in determining the figure for actual value of plaintiff's building. As noted by the trial court in his written opinion, Umpire McNelis did calculate an actual cash value figure for the property of $228,540.29. In reviewing whether Umpire McNelis committed error requiring reversal by this Court, we must first decide by what legal standard to judge his conduct.

The Michigan Supreme Court has held that an appraisal clause like the one at issue in the present case constitutes a common-law arbitration agreement. *Manausa v St Paul Fire and Marine Ins Co,* 356 Mich 629, 633; 97 NW2d 708 (1959). Consequently, we will not apply so strict a standard in reviewing such arbitrated appraisals as we would in cases involving statutory arbitration proceedings. *E E Tripp Excavating Contractor Inc v Jackson County,* 60 Mich App 221, 236; 230 NW2d 556 (1975). However, we find the test used in earlier case decisions to measure the conduct of parties involved in arbitration of similar insurance contracts proper in this case as well. *Shapiro v Patron's Mutual Fire Insurance Co,* 219 Mich 581; 189 NW 202 (1922). In *Shapiro,* conduct of the parties in arbitration was judged by whether or not they "acted in bad faith, so as to defeat the real purpose of the arbitration * * * ". *Shapiro v Patron's Mutual Fire Insurance Co, supra* at 583.

Applying that measure to this case, we see no evidence that Umpire McNelis acted in bad faith. In deposition testimony, Umpire McNelis explained his determination of the actual cash value of the building in the following terms:

"By the time I was done using various methods that are available, none of them had any rhyme nor reason to them. You could have that building depending on if you followed the tax assessor's figure, it wouldn't be worth much, or if you followed per square footage it would be over three, four, five hundred thousand. So between them all I thought I'd take a figure I thought it was worth, period."

Although one early Michigan case involving a personal property fire loss held that actual cash value means market value, *Mitchell v St Paul German Fire Insurance Co,* 92 Mich 594, 599; 52 NW 1017 (1892), we do not believe market value is the sole measure. In fact, we do not believe any set method is necessary within the appraisal context. We find substantial support for this position:

"Although for some time almost all courts applied either the market value or the reproduction or replacement value test in determining 'actual cash value,' there has been in recent years a tendency on the part of some courts to look beyond these criteria in order that more complete indemnity might be effectuated. These courts have held, in essence, that any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property might be considered by the trier of facts in determining 'actual cash value' at the time of loss. Thus, in applying this rule, which might be denominated the broad evidence rule, the courts have not abandoned consideration of either market or reproduction or replacement values in arriving at 'actual cash value,' but view them merely as guides in making that determination, rather

than shackles compelling strict adherence thereto." (Footnote omitted.) Anno: *Test or Criterion of "Actual Cash Value" under Insurance Policy Insuring to Extent of Actual Cash Value at Time of Loss,* 61 ALR2d 711, 718–719.

Consequently, measuring Umpire McNelis's determination of actual cash value by a standard of bad faith, we cannot clearly say that his unorthodox method indicated bad faith or constituted reversible error.

However, defendant contends further that the trial court erred in its review of the appraisal proceedings and, specifically, whether those proceedings correctly established the cash value of the insured's fire-damaged property.

We have noted that this appraisal clause constitutes a common-law arbitration agreement. *Manausa v St Paul Fire and Marine Insurance Co, supra* at 633. Thus, in reviewing alleged error by the trial court, we may employ a standard for reversal less severe than in cases involving statutory arbitration proceedings. *E E Tripp Excavating Contractor Inc v Jackson County, supra* at 236. However, though we may use a less stringent standard than that employed in such statutory arbitration, we recognize the statutory nature of the appraisal provision in this case, the quasi-judicial function Umpire McNelis performed, and so approach review of Judge Carroll's denial of defendant's motion to set aside the award with some care:

"There is power in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrator, or they have acted under manifest mistake, and perhaps in some defined and undefined cases. But it is evident that there are great objections to any general interference by courts with

awards. They are made by a tribunal of the parties' own selection, who are, usually at least, expected to act on their own view of law and testimony more freely and less technically than courts and regular juries. They are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that after resorting to such private tribunals either party may repudiate their action and fall back on the courts. And equity, on whatever pretext it may intervene in such cases, does so upon the reason that the tribunal has not really acted within the lines of the duty laid upon it, and has not in fact carried out the agreement under which it has obtained authority to proceed." *Port Huron & Northwestern R Co v Callanan,* 61 Mich 22, 26; 34 NW 678 (1887).

In a similar case brought in equity involving an appraisal under the same statute and alleging "mistakes in procedure, * * * [and] lack of compliance with the terms of the appraisal clause of the policies", the Michigan Supreme Court found that the chancellor in that case was "in a better position to appraise the witnesses in their testimony" and that the chancellor did not find sufficient evidence of error to justify upsetting the award. The Supreme Court was simply "not persuaded that the chancellor erred in [his] findings of fact". *Manausa v St Paul Fire and Marine Insurance Co, supra,* at 633.

In this case, where we review the trial court's denial of defendant's motion by a similar standard to that used in *Manausa,* we are not persuaded the court was in error by finding that Umpire McNelis had determined and correctly determined the actual cash value of the building. The question of whether Umpire McNelis had determined an actual cash value figure in compliance with the contractual provisions was one of fact, and we

believe no legal error arose from the trial court's decision that such a cash value had been determined.

Neither do we find the trial court failed to resolve whether defendant was responsible under its fire insurance policy for damage to freezers in plaintiff's building. In its motion to set aside the appraisal award, defendant contended that as to freezer damage the policy of insurance held by Davis Locker Plant, Inc., provided primary coverage which had to be exhausted before any liability under defendant's policy arose.

In his written opinion, the trial judge ruled on this claim as follows:

"It appears from supporting Affidavit that there was no damage to the small freezer room but there was physical damage to the 2 large rooms (the freezer and cooler rooms) which the appraiser determined to be $36,965.99. Apparently the compressor was not damaged but there were costs to service the equipment following the fire and reinstallation after the freezer room and cooler room were repaired. The damage suffered by tenant appears to be only to the compressor. The remaining damage in this area appears to fall under the landlord's claim and is, therefore, covered by the landlord's policy."

At a later hearing, Judge Carroll was clear that he found freezer damage sustained was not covered under the Locker Plant's insurance policy.

Once the trial court has made a factual finding as to the interpretation of a contract, its determination will not be upset on appeal unless clearly erroneous. *Keller v Paulos Land Co,* 5 Mich App 246, 256; 146 NW2d 93 (1966). See GCR 1963, 517.1.

The "other insurance" exclusionary clause defendant cites becomes operative only where at the

time of the loss other insurance "available" to the insured or any other interested party covering or potentially covering the loss is available. The trial judge found that the insurance held by plaintiffs' tenant Davis Meat Locker Plant did not provide coverage for damage to the freezers in plaintiffs' building. That finding is supported by the record. The subject freezers were not owned by the locker plant, nor were they made or acquired at its expense. Moreover, the cost of their repair was absorbed by plaintiffs and not the plant. Having found that no other insurance was available to pay for freezer damage, the trial court correctly concluded that defendant was liable. We do not find that decision clearly erroneous.

Defendant argues that the trial court erred in refusing to upset the appraiser's award allowing plaintiffs' reimbursement for damages to covered-over ceilings and floors.

The award to plaintiffs for covered-over ceilings and floors can be justified by the simple fact that these items were found to have value as insulation or structural support. *Michels v Western Underwriters Assoc,* 129 Mich 417; 89 NW 56 (1902). We do not find the trial court's determination clearly erroneous. *Keller v Paulos Land Co, supra* at 256. See GCR 1963, 517.1.

Regarding whether the trial court erred in refusing to vacate the appraiser's award because of possible improper calculation, we find no reversible error. because, even were the figure for loss and damage agreed upon by the two members of the appraisal committee arrived at by mistake in computation, this figure was apparently adopted as an appropriate total award notwithstanding any error committed in reaching it. Specifically, Umpire McNelis and appraiser Krause agreed upon $202,330

as the amount of loss and damage suffered by plaintiffs. They did not agree to adopt the sum of the Umpire's two initial figures. Given this fact, we do not believe that reformation of the appraisal award on the basis of mistake would be appropriate.

Finally, we do not believe the trial court exceeds its authority in ordering defendant to pay one-half of the court-appointed Umpire's fees. We need only note in this regard that the policy of insurance issued plaintiffs by defendant contained the following provision regarding the payment of fees arising out of appraisal proceedings:

"Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." See MCLA 500.2832(1); MSA 24.12832(1).

In ruling upon Umpire McNelis's motion for fees, the trial court stated:

"In regard to the fee of the Umpire, this Court has no way of knowing the number of hours spent by the Umpire. The fee requested when compared to the lengthy testimony obviously taken and the length of time required, which this Court can easily infer from the statement of the Umpire, in which he refers to meetings at the loss site, meetings in the Court building, attendance at depositions, independent visits to the loss site and necessary research, does not appear to be unreasonable in the absence of some definite showing. It would, perhaps, have been better had the hours been reported. However, the Court does not consider this to be blatantly unreasonable."

We have no doubt that the parties in the case at bar agreed to equally share the expense of Umpire

fees. The trial court's determination that the fees charged by Umpire McNelis were not unreasonable was not clearly erroneous. *Keller v Paulos Land Co, supra* at 256. See GCR 1963, 517.1.

Having reviewed defendant's various allegations of error and finding none persuasive, we sustain the proceedings below.

Affirmed. Costs to be paid by defendant-appellant.