UNION LAKE ASSOCIATES, INC v COMMERCE & INDUSTRY
INSURANCE COMPANY

Docket No. 78-157. Submitted November 14, 1978, at Lansing.—Decided March 20, 1979.

Plaintiff Union Lake Associates, Inc., owned a shopping center insured by defendant Commerce and Industry Insurance Company. A storm seriously damaged a store in the shopping center and plaintiff filed a claim of loss with defendant. The parties failed to agree on the valuation of the damage. Pursuant to the policy's appraisal provision each party then selected an appraiser and an umpire was appointed upon the parties' petition to the Mason Circuit Court. The appraisers subsequently determined the amount of loss to the building, which amount the defendant did not dispute and has paid in full. The question of the amount of compensable rental loss sustained by the plaintiff remained unsettled until the umpire proposed an award for six months rental loss and the plaintiff's appraiser signed the award. Plaintiff then filed a motion for summary judgment on the appraisal award and defendant made a motion to set aside or modify the appraisal award. The Mason Circuit Court, Charles A. Wickens, J., denied the defendant's motion, granted the plaintiff's motion, and held that the defendant was bound by the decision of the appraisal panel. Defendant appeals. *Held:*

1. The defendant is bound by the compromise decision of two out of the three members of the appraisal panel since there is no evidence that the umpire had either acted fraudulently, in bad faith, or had committed a patent mistake of law.

2. The appraisal panel was authorized to determine the amount of actual cash value and loss of the rentals.

3. Plaintiff's appraiser did not necessarily adopt the umpire's underlying rationale by merely signing the umpire's monetary award.

4. The record does not indicate that the umpire made any

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur 2d, Insurance § 1708.
[2] 5 Am Jur 2d, Arbitration and Award § 136.
[3] 5 Am Jur 2d, Arbitration and Award § 163.
[4] 44 Am Jur 2d, Insurance § 1719.

manifest legal error and does not give a basis for overturning the award.

5. The arbitrator was not bound, in determining the amount of rental loss, by a preliminary agreement between the plaintiff and a potential tenant for the damaged building whereby the tenant was to have the first three months of occupancy under the lease free of rent since no lease to such effect had been signed at the time the store was damaged.

Affirmed.

1. INSURANCE — APPRAISAL — ARBITRATION AGREEMENTS — STANDARD POLICY FORM — STATUTES.

A submission to appraisal under an appraisal clause contained in an insurance contract which conforms to the form required of a standard insurance policy constitutes a common law arbitration agreement (MCL 500.2832; MSA 24.12832).

2. INSURANCE — ARBITRATION AGREEMENTS — SCOPE — ISSUES — POWER.

The scope of an arbitration agreement between parties dictates the issues to be addressed by the arbitrators because they derive their power solely from the parties' agreement; an arbitration award must not exceed the authority granted the arbitrators.

3. ARBITRATION AND AWARD — COMMON LAW — GROUNDS FOR CONTESTING AWARD.

The standard of review for common law arbitration agreements in general is limited; bad faith, fraud and misfeasance affecting the integrity and impartiality of the proceedings are always grounds for attacking an appraisal award.

4. INSURANCE — ARBITRATION AGREEMENTS — SETTLEMENTS — VALIDITY — MANIFEST LEGAL ERROR.

An insurance settlement figure which was agreed upon by two of three members of an appraisal committee which was selected pursuant to an arbitration agreement in an insurance policy is valid where the record does not indicate manifest legal error or any basis for overturning the award.

*Bacalis & Associates, P.C.* (by *Jesse R. Bacalis* and *Christopher J. Wiggins*), for plaintiff.

*Denenberg, Tuffley & Thorpe* (by *Charles R. Tuffley* and *Ilene Gordon*), for defendant.

Before: CYNAR, P.J., and R. B. BURNS and M. B. BREIGHNER,* JJ.

M. B. BREIGHNER, J. Defendant insurance company appeals from the circuit court's refusal to modify or set aside an appraisal award made pursuant to the statutorily mandated appraisal procedure in plaintiff's fire insurance policy. MCL 500.2832; MSA 24.12832.

Defendant was the insurer of a shopping center in Ludington, Michigan, owned by plaintiff. On February 3, 1976, a storm seriously damaged a store in the shopping center. Plaintiff filed a claim of loss with defendant under its insurance policy, but the parties failed to agree on the valuation of the damage. Pursuant to the statutorily required appraisal provision of plaintiff's policy, MCL 500.2832(1); MSA 24.12832(1), the parties each selected an appraiser. Upon petition, the circuit court appointed Ronald K. Johnson to serve as umpire on July 27, 1976. The appraisers and umpire subsequently determined that the amount of loss to the building was $69,107.40. Defendant does not dispute this part of the appraisal award and has paid it in full.

However, the amount of compensable rental loss sustained by plaintiff remained unsettled. Although the parties stipulated that the fair rental value of the premises was $8,748 per month, the appraisers and umpire could not agree on the length of the indemnity period.

The dispute focused upon the following provisions of plaintiff's insurance policy:

"2. The Company shall be liable for:
"a. the actual loss sustained by the insured resulting

* Circuit judge, sitting on the Court of Appeals by assignment.

directly from necessary untenantability, but not exceeding the reduction in rents less charges and expenses which do not necessarily continue during the period of untenantability for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed commencing with the date of such damage or destruction and not limited by the date of expiration of this policy.

\* \* \*

"6. Additional Exclusions and Limitations:

"a. the Company shall not be liable for any increased loss which may be occasioned by:

\* \* \*

"(3) the suspension, lapse or cancellation of any lease, contract or order unless such suspension, lapse or cancellation results directly from the untenantability of the premises and then the Company shall be liable for only such loss as affects the rents of the premises during and limited to the period of indemnity under this policy."

Immediately prior to the damage incurred, plaintiff had been negotiating with the S. S. Kresge Company for the lease of the store. On January 27, 1976, one week before the damage occurred, Kresge had sent plaintiff a letter announcing its intent to lease subject to concluding a satisfactory lease agreement based on certain stated terms and conditions. Among the terms listed in the letter was a provision that rent payments would not commence until "90 days from consummation of lease or from date of delivery of premises to Kresge, whichever occurs later". Plaintiff had approved the terms.

At a final meeting of the appraisers and umpire held on March 22, 1977, the umpire concluded that the period required to make building repairs

was six months and that plaintiff should be awarded \$52,488 for consequent rental loss. Because neither appraiser concurred, the meeting ended without agreement.[1] But in June, 1977, plaintiff's appraiser signed the umpire's proposed award.[2]

On July 27, 1977, plaintiff filed for summary judgment on the appraisal award, alleging that no issue of material fact remained. Defendant moved to modify or set aside the appraisal award based on an alleged error of law by the umpire. Defendant contended that the umpire had erroneously interpreted the policy provisions regarding coverage of rental loss and had allowed plaintiff to recover for a three-month period when it could not have collected rent regardless of damage to the store. Plaintiff argued in response that, given the standard of review for such statutory appraisal awards, defendant had shown no adequate reason for the circuit court to interfere with or overturn the award.

The trial court first ruled that defendant had failed to prove that the appraisal award incorporated any mistake of law. The record only showed agreement between the umpire and plaintiff's appraiser as to the amount of rental loss sustained, and not as to the legal theory supporting the award. Second, even if defendant could attack the award on the basis of only one signer's mistake, the court found no evidence that the umpire had acted fraudulently or in bad faith, or that he had

[1] In an affidavit filed with the trial court, plaintiff's appraiser alleged that he had claimed nine months as an appropriate indemnity period and had submitted an award for \$67,500. He further alleged that defendant's appraiser had contended no rental loss was due plaintiff.

[2] The appraisal award signed by plaintiff's appraiser only stated the total amount of rental loss and not the length of the indemnity period.

committed a patent mistake of law. The trial court concluded that defendant was bound by the compromise decision of two out of the three members of the appraisal panel. We affirm.

MCL 500.2832(1); MSA 24.12832(1), which includes the statutorily required appraisal procedure incorporated into plaintiff's policy, provides in pertinent part as follows:

"In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

The total amount of loss as contained in the appraisal award is payable 60 days after the award is filed with the insurer. The policy provides that neither party may seek court review of a claim until the appraisal process has been invoked and completed:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall

have been complied with, and unless commenced within twelve months next after inception of the loss."

See, also, *Thermo-Plastics R & D, Inc v General Accident Fire & Life Assurance Corp, Ltd,* 42 Mich App 418; 202 NW2d 703 (1972), *Innis v Fireman's Fund Ins Co,* 218 Mich 253; 187 NW 268 (1922).

Although appraisal is generally distinguished from arbitration,[3] the terminology used is not necessarily conclusive of the nature of the process. The Michigan Supreme Court has held that a submission to appraisal under MCL 500.2832; MSA 24.12832 constitutes a common law arbitration agreement. *Manausa v Saint Paul Fire & Marine Ins Co,* 356 Mich 629, 633; 97 NW2d 708 (1959), *Davis v National American Ins Co,* 78 Mich App 225, 232; 259 NW2d 433 (1977). It is a well-settled arbitration principle that the scope of the agreement between the parties dictates the isues to be addressed by the arbitrators. Likewise, the arbitration award must not exceed the authority granted the arbitrators, who derive their power solely from the parties' agreement. *Carr v Kalamazoo Vegetable Parchment Co,* 354 Mich 327; 92 NW2d 295 (1958), *Smith v Highland Park Board of Education,* 83 Mich App 541; 269 NW2d 216 (1978).[4]

The statutory appraisal agreement here at issue limits the scope of the appraisal proceedings to a determination of the amount of actual cash value

[3] See *Noble v Grandin,* 125 Mich 383, 390; 84 NW 465 (1900), *Campbell v Michigan Mutual Hail Ins Co,* 240 Mich 167; 215 NW 401 (1927), *E E Tripp Excavating Contractor, Inc v Jackson County,* 60 Mich App 221, 246; 230 NW2d 556 (1975).

[4] Defendant would have us adopt the reasoning in *Jefferson Ins Co of New York v Superior Court of Alameda County,* 3 Cal 3d 398; 90 Cal Rptr 608; 475 P2d 880 (1970), in which the California court held that appraisers generally have more limited powers than arbitrators. We decline since Michigan precedent directs us to look to the scope of the appraisal agreement between the parties under MCL 500.2832; MSA 24.12832.

and loss suffered by the policyholder. Plaintiff and defendant further specifically agreed, pursuant to plaintiff's policy, to submit the question of plaintiff's rental loss to the appraisers and umpire.[5] The appraisal panel was thus authorized to determine "the amount of actual case value and loss" of rentals.

The standard of review for common law arbitration agreements in general, and for the instant statutory appraisal process in particular, is limited. *E E Tripp Excavating Contractor, Inc v Jackson County,* 60 Mich App 221; 230 NW2d 556 (1975), *Davis, supra.* Bad faith, fraud and misfeasance affecting the integrity and impartiality of the proceedings are always grounds for attacking an appraisal award. *Davis, supra.* Defendant has not, however, alleged any such dereliction by the appraisers or umpire.

Defendant instead contends that this Court should set aside the appraisal award because of the umpire's manifest error of law in awarding plaintiff rental loss for a period during which, by the terms of the policy, defendant could not be held liable for such loss. Defendant also alleges that plaintiff's appraiser joined in the manifest error by signing the umpire's appraisal award.

We first note that, by merely signing the umpire's monetary award, plaintiff's appraiser did not necessarily adopt the umpire's underlying ratio-

---

[5] Defendant argues on appeal that, in resolving the dispute between the parties as to compensable rental loss under the policy, the umpire and appraisers only had the power to decide the amount of rental loss per month and the number of months required to make the building tenantable. It was then the trial court's responsibility to apply those factual findings to the terms and provisions of the policy. Contrary to defendant's contention, the statutory appraisal provision states that the appraisers and umpire shall assess separately actual cash value and loss to each item. Since rental loss was an item submitted, the appraisal panel in this case was authorized to determine the rental loss as a whole.

nale. It is equally probable that he compromised his own conclusions in order to resolve the dispute.[6] *Cf., Davis, supra,* at 237-238.

As for the umpire's appraisal, the record does not indicate that he made any manifest legal error or that we have any basis for overturning the award. Defendant's whole argument rests on the premise that plaintiff had previously contractually bound itself not to collect rent from Kresge for three months of the period required to repair the damaged building. Thus, defendant argues, rental loss was not attributable to damage for which defendant could be liable. This is simply not true. While plaintiff had expressed preliminary agreement to such a term, no lease had been signed at the time the store was damaged. Suspension of plaintiff's rental income due to circumstances other than damage covered under the policy was merely a factual possibility for the umpire and appraisers to consider, not an established fact mandating a firm legal conclusion as to plaintiff's coverage under the policy.[7]

---

[6] In his affidavit to the trial court, plaintiff's appraiser stated, "The decision on loss and damage was the result of a compromised decision and did not represent the adoption of any one point of view, theory of law, or agreement on the facts."

[7] At the circuit court hearing on defendant's motion to set aside the appraisal award, the umpire testified in part as follows:

"I would like to back up so far as to inform the Court of what I considered concerning the K-Mart lease. There was a letter dated January 27th to the plaintiff from Kresge Company detailing a consent or an agreement of lease. It isn't a formal lease. This is a business letter. We relied quite heavily on this letter to establish the dollar value, because it apparently is an arms length transaction. And, one of the terms that's spelled out in here, it details that ninety days after the consummation of the lease or the date of delivery of the premises, the rent would start. It doesn't specifically refer to May 8th, or anything. It just says ninety days after possession. And, as I considered this, having, and I am sure we will speak to this, having determined a six-month indemnity period, it was my feeling that one way to consider this thing, anyway, was that after the six-month indemnity period, possession would again then be delivered and there would be another three months before any rent would come due. Or,

The statutory appraisal procedure has been called "a substitute for judicial determination of a dispute concerning the amount of loss", and "a simple and inexpensive method for the prompt adjustment and settlement of claims". *Thermo-Plastics, supra,* at 422, *Davis, supra,* at 231. If it is to fulfill these functions, umpires and appraisers must be allowed to freely weigh speculative considerations affecting determinations of loss. Compare *Port Huron & Northwestern R Co v Michael Callanan,* 61 Mich 22, 26; 34 NW 678 (1887). We decline to interfere with a resolution particularly within the intended scope of the umpire's and appraisers' powers.[8]

Affirmed. Costs to plaintiff.

---

another way of considering the whole matter was that this is merely the best evidence we have of the rental value, since this is a twenty-year lease and we have no idea why the parties determined that no rent would be due in the first three months, and I felt it would conversely be appropriate to just ignore that as some sort of baiting or concession that had been made for one reason or another that didn't seem to have anything to do with the rental value of the premises.

\* \* \*

"In looking at the policy and my main concern was that it was actually nine months until rental monies would start flowing into this after this loss. The term of the three-month delay from possession until commencement of rent, I felt it was delayed six months and this six months' delay, or read it nine-month delay, is also a direct result of the collapse. And, I believe the matters, as I read the policy, were covered. There is a provision in the policy for, well, perhaps I could find it, that would, as I interpreted it, would cover this additional three months on the other end. If we are to say that this is the word, this Kresge letter saying that there is no rent due for this first three months, and that is to be considered in this matter, then it must be considered at the other end and the three months tagged on the end, as a consequent loss. Or, it could just as easily be considered that this Kresge letter had nothing at all to do with it and was merely evidence of the rental value, whereupon it doesn't matter."

[8] Most of the parties' argument on appeal concerned the scope of appraisers' and umpires' powers to decide legal questions of liability and coverage under the terms of insurance policies. Because we conclude that the facts of the instant case do not squarely raise this issue, we do not address it. See *Schreiber v Pacific Coast Fire Ins Co,*

195 Md 639; 75 A2d 108; 20 ALR2d 951 (1950). But see, contra, *Atlas Construction Co, Inc v Indiana Ins Co, Inc,* 160 Ind App 33; 309 NE2d 810 (1974), *Jefferson Ins Co of New York v Superior Court of Alameda County,* 3 Cal 3d 398; 90 Cal Rptr 608; 475 P2d 880 (1970).