931 F.2d 56
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mety METY and Marian T. Mety, Plaintiffs-Appellants,
v.
STATE FARM FIRE and CASUALTY, Defendant-Appellee.
 No. 89-2233.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs, Mety and Marian Mety ("plaintiffs"), appeal from the district court's September 25, 1989, order granting a partial directed verdict in favor of defendant, State Farm Fire and Casualty Company ("State Farm"), in this diversity action to recover payment for loss sustained as a result of a fire at plaintiffs' business. For the reasons set forth below, we REVERSE.
 
 I.
 
 2
 Plaintiffs were the owners of a grocery store named Matthew's Party Shoppe which they operated in Detroit, Michigan. In the early morning of November 3, 1987, the grocery was consumed by fire. The fire damaged or destroyed much of the inventory, stock and store fixtures. At the time of the fire, plaintiffs were covered by an insurance contract which they had purchased from State Farm in 1983. The policy insured plaintiffs' interest in the contents of the grocery store against loss by fire and other stated perils, subject to the terms, provisions, conditions and limitations of the policy.
 
 
 3
 Plaintiffs immediately reported the fire to State Farm. On November 6, 1987, State Farm sent plaintiffs a letter informing them that it was uncertain whether the fire was accidental. State Farm advised plaintiffs that it, therefore, reserved all defenses available to it under the insurance contract.
 
 
 4
 State Farm sent a representative to the scene who, along with a professional fire investigator, investigated the fire. On November 11, 1987, State Farm's claims specialist, Thomas McCloskey, conducted another investigation of the fire. Glenn Harris ("Harris"), a professional fire investigator, and his employee, Christopher Helgert, also investigated the fire.
 
 
 5
 On December 31, 1987, plaintiffs submitted a timely sworn proof of loss statement on forms provided by State Farm. The sworn proof of loss statement was accompanied by a personal property inventory of all items in the store that had been damaged by the fire. In the personal property inventory, plaintiffs catalogued, as items seven through twenty-one, equipment and fixtures such as wine and beer coolers, a walk-in cooler, shelving units and compressors. The personal property inventory indicated that the total value of items seven through twenty-one is $42,500. This figure was based on the price plaintiffs paid when they purchased the grocery in 1983. Plaintiffs did not provide an itemized value of the amount of the loss for the equipment and fixtures included in items seven through twenty-one.
 
 
 6
 State Farm obtained Harris' fire investigation report and examined plaintiffs under oath to obtain additional documentation of the loss. On May 16, 1988, State Farm rejected and denied plaintiffs' claim on several grounds. First, State Farm asserted that the fire was intentionally set by plaintiffs or by persons acting at their direction. Second, State Farm asserted that plaintiffs had willfully concealed material facts and circumstances and had committed fraud and false swearing regarding certain material facts and circumstances surrounding the claim. Third, State Farm asserted that plaintiffs had failed to comply with the loss requirements of the policy regarding the submission of their claim. Therefore, State Farm contended, plaintiffs were not entitled to recover under the insurance policy.
 
 
 7
 Plaintiffs filed suit on May 17, 1988, for recovery under the insurance contract. The matter proceeded to a jury trial on July 17, 1989. Certain documents were introduced by way of stipulation between the parties. The only documents introduced regarding the extent of the plaintiffs' damages were the sworn proof of loss statement and a twenty-five page inventory of the personal property alleged to have been on the premises at the time of the fire.
 
 
 8
 Plaintiffs called McCloskey, State Farm's claim specialist, as their only witness. His testimony established that the contract of insurance existed at the time of the fire, plaintiffs incurred loss as a result of the fire, plaintiffs submitted a notice of the loss and a sworn statement of proof of the loss, and State Farm denied plaintiffs' claim. McCloskey testified that he had investigated the fire with Glen Harris, the professional fire investigator retained by State Farm, and that State Farm's denial of plaintiffs' claim was based on the investigative report prepared by Harris' company. McCloskey testified that he did not know the actual cash value of the insured property at the time of the fire or the amount of the loss and damage sustained as a result of the fire. He also stated that his observations of the fire scene revealed that several pieces of equipment and fixtures were not destroyed in the fire. McCloskey testified that he did not receive any estimates regarding the cost to repair or renovate the personal property as requested. In his opinion, plaintiffs had overstated their claim.
 
 
 9
 After hearing McCloskey's testimony, one of the jurors disclosed that he knew Harris through his membership in the Rotary Club. The juror indicated that he saw Harris monthly at the club meetings. Based on this disclosure, plaintiffs moved for dismissal of the juror. The district court denied the motion. Both the juror and the court were advised that State Farm planned to call Helgert, an employee of Harris Investigations, not Harris. The juror stated that his acquaintance with Harris would not affect his ability to sit as an impartial juror.
 
 
 10
 At the close of plaintiffs' proofs, State Farm moved for a directed verdict, claiming that plaintiffs' proofs were insufficient, as a matter of law, to submit the case to the jury. The district court ruled that only a portion of plaintiffs' twenty-five page personal property inventory constituted sufficient evidence to be submitted to the jury. Specifically, the district court also ruled that, with respect to the items seven through twenty-one of plaintiffs' inventory, the evidence was insufficient for submission to the jury. The district court granted State Farm's directed verdict based on the items seven through twenty-one of plaintiffs' claim relating to the damage and destruction of certain store fixtures whose total value, $42,500, had been set forth by plaintiffs. Plaintiffs voluntarily dismissed the remainder of plaintiffs' claim which totaled $12,251.74 and thereafter filed a timely notice of appeal.
 
 II.
 A.
 
 11
 As a federal court sitting in a diversity action, we must apply the forum state's standard for a directed verdict, since the federal rule governing the motion, Fed.R.Civ.P. 50(a), does not specify a standard. Boynton v. TRW, Inc., 858 F.2d 1178, 1186 (6th Cir.1988) (en banc). Michigan law provides that an appellate court reviewing a trial court's ruling on a directed verdict "must view the testimony, and all legitimate inferences that may be drawn therefrom, in the light most favorable to the [nonmoving] party." Id. at 1186-87 (quoting Bonelli v. Volkswagen of America, Inc., 166 Mich.App. 483, 513-14 (Mich.Ct.App.1988)) (citations omitted). Without weighing the credibility of the witnesses or considering the weight of the evidence, we must determine whether the evidence is such that "there is substantial evidence from which the jury could find in favor of the party against whom the motion is made." Hill v. McIntyre, 884 F.2d 271, 274 (6th Cir.1989) (quoting Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570, 579 (6th Cir.1979)). If reasonable jurors could have reached different conclusions, then the motion for directed verdict should have been denied. Matras v. Amoco Oil Co., 424 Mich. 675, 681-82 (1986). Under such circumstances, no court has the authority to substitute its judgment for that of the jury. Id.
 
 
 12
 This action is governed by the provisions of the Michigan Standard Fire Insurance Policy, Mich.Comp.Laws Sec. 500.2832.[1] Plaintiffs' policy and the statute provide in pertinent part:
 
 
 13
 The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed....
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.
 
 
 17
 Id. To avoid liability under the policy, State Farms relies on the statutory language incorporated in the policy requiring the insured to show in detail the actual cash value and the amount of loss claimed. State Farm contends that the directed verdict was proper to prevent the jury from having to resort to pure speculation regarding the amount of loss plaintiffs incurred.
 
 
 18
 We conclude that jurors could honestly have reached different conclusions regarding State Farm's liability under the insurance contract. The district court's grant of State Farm's motion for directed verdict, therefore, was erroneous. The parties stipulated to several facts including the existence of the contract of insurance at the time of the loss, the occurrence of the loss, and State Farm's denial of plaintiffs' claim on May 16, 1988. McCloskey's testimony further established that plaintiffs submitted a timely notice of loss on December 31, 1987, a sworn proof of loss statement (exhibit 20) and an inventory of those items of personal property claimed to have been damaged or destroyed in the fire (exhibit 21). The proof of loss forms and the personal property inventory established an estimated value of the items as required by the contract of insurance. Plaintiffs therefore established a prima facie case for recovery under the contract. See Mich.Comp.Laws Sec. 500.2832 (Requirements in case loss occurs.); see also Contractors Realty Co. v. Insurance Co. of North America, 469 F.Supp. 1287, 1292 (S.D.N.Y.1979) ("In order to make out a prima facie case for recovery, plaintiff must establish that the policy of insurance was issued, that the loss occurred, and that the loss was an event within the terms of the policy.").
 
 
 19
 In its argument before the district court, State Farm stated that plaintiffs' valuation of items seven through twenty-one was "nothing other than a naked opinion in those documents expressed by a lay person who is not qualified to render it." Joint Appendix at 213. State Farm's statement implies that plaintiffs were obligated to engage a professional appraiser to fulfill the policy's requirement that they submit a proof of loss statement and a personal inventory. Contrary to McCloskey's testimony that State Farm merely required plaintiffs to submit an estimate of the actual cash value and the amount of loss, it appears that had plaintiffs provided anything other than a professional appraiser's estimate, their claim would have been susceptible to a directed verdict. Neither party elected to engage a professional appraiser through the statute's appraisal procedure, we, therefore, find no support in the policy or the relevant statute, Mich.Comp.Laws Sec. 500.2832, for the disqualification of plaintiffs' estimate because they, as laypeople, rendered it. In Davis v. National Ins. Co., 78 Mich.App. 225, 233-34 (Mich.Ct.App.1977), the Michigan Court of Appeals endorsed the broad evidence rule for determining actual cash value when the appraisal procedure is employed under the statute. The Davis court stated that "any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property might be considered by the trier of facts in determining 'actual cash value' at the time of the loss." Id. at 233. We believe that it is appropriate to apply the broad evidence rule to this case where plaintiffs have provided their best estimate of the actual cash value and amount of loss.
 
 
 20
 The jury should have been permitted to consider plaintiffs' personal inventory and to accept or reject it in the context of all of the evidence presented. Such proofs were submitted for the purpose of aiding the jury in arriving at a verdict that was not based on pure speculation. State Farm was free to provide contrary evidence of the actual value and the amount of loss for the jury's consideration. That plaintiffs rendered an estimate of actual cash value and amount of loss that State Farm found incredible, however, does not support the determination that the jurors could honestly draw only one conclusion regarding State Farm's liability.
 
 
 21
 Based on our review of the evidence that plaintiffs submitted, we hold that the district court erred in directing a verdict for State Farm. Plaintiffs' proof of loss statement and their personal inventory constituted probative evidence from which a jury could logically base a determination as to the actual cash value of the destroyed property. In its totality, plaintiffs' evidence was sufficient to establish a prima facie case of loss under Michigan law.
 
 B.
 
 22
 In light of our disposition of the first issue, we need not reach plaintiffs' claim that the district court erred in denying their motion to dismiss a juror who revealed his acquaintance with Harris. The jury did not decide this case because the district court granted a partial directed verdict and plaintiffs voluntarily dismissed the balance of their claim. On remand, a new jury will be impaneled to try the issues. The propriety of the district court's denial of plaintiffs' request to dismiss a juror is no longer of any import. We, therefore, decline to review the district court's decision regarding this matter.
 
 III.
 
 23
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 The policy at issue in this case is a standard policy enacted by the Michigan legislature and codified at Mich.Comp.Laws Sec. 500.2832